In re BORDER STEEL, INC., Relator.

No. 08–06–00308–CV.

Court of Appeals of Texas,
El Paso.

June 28, 2007.

Rehearing Overruled July 25, 2007.

Jeffrey S. Alley, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, for Relator.

Patrick M. Garcia, El Paso, pro se.

Susan Larsen, Flahive, Ogden and Latson, El Paso, for Real Party In Interest.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## OPINION

KENNETH R. CARR, Justice.

Relator Border Steel, Inc. ("Border Steel") asks this Court to issue a writ of mandamus against Respondent, the Honorable Patrick M. Garcia, Judge of the 384th Judicial District Court in El Paso County, Texas. For the reasons that follow, we conditionally grant the relief requested.

### FACTUAL AND PROCEDURAL BACKGROUND

Real Party in Interest Mario Juarez was an employee of Border Steel, a nonsubscriber under the Texas Workers' Compensation Act. In February of 2001, Border Steel offered its employees an independent "Employee Injury Benefit Plan" (the "Benefit Plan" or the "Plan") to provide for lost wages and medical care in the event of a work-related injury. The Benefit Plan was composed of three documents: (1) a detailed explanation of the Plan ("the plan document"); (2) a condensed Plan Summary, which was provided to all employees; and (3) a Waiver and Arbitration Agreement,[1] which each employee was required to sign,[2] if he wished to participate in the Plan and be eligible to receive benefits.[3] By signing the waiver, an employee irrevocably and unconditionally waived and released all rights to sue Border Steel for personal injuries, damages, or death, arising out of the negligence, including negligence per se, of Border Steel. Benefits received under the Plan were declared to be the sole remedy for any damages, injuries, or death.

---

1. The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.

2. The "Waiver and Arbitration Agreement" ("Agreement" or "Arbitration Agreement") was available in English and Spanish versions. Juarez signed the Spanish version on February 28, 2001.

3. Signing the Agreement was not, however, a condition of continued employment at Border Steel.

The waiver contained a provision whereby Border Steel and the participating employee agreed to submit all employment-related disputes, including personal injury claims, to binding arbitration. The Arbitration Agreement incorporated all the arbitration procedures provided by the Benefit Plan and the Plan Summary. The Plan document and the waiver both explained that, by executing and agreeing to the terms of the waiver, an employee affirmatively acknowledged that he was waiving his right to a jury trial on all claims covered by the Agreement. The procedures were also outlined in several presentations which Border Steel employees attended in February and March of 2001. Juarez elected to participate in the Plan.

Juarez was injured on January 5, 2004, while in the course and scope of his employment at Border Steel. Pursuant to the Benefit Plan, Border Steel paid Juarez short-term disability benefits and his medical expenses related to the injury. On February 17, 2005, Juarez filed suit against Border Steel, alleging that his employer negligently caused his injuries. After filing its original answer and general denial, Border Steel moved to abate the lawsuit and compel arbitration, based on the Agreement which Juarez had signed as part of his enrollment in the Employee Benefit Plan. In response to Border Steel's motion to compel, Juarez argued that the Agreement was not enforceable.

On April 6, 2006, following a hearing, the trial court denied the motion to compel arbitration, without stating the grounds for the denial. The parties agreed to attend mediation in October 2006, but were not able to come to a settlement. Border Steel then filed this proceeding in mandamus.

In a single issue, Border Steel argues that the trial court clearly abused its discretion by denying the motion to compel arbitration. Juarez responded to Border Steel's Petition for Writ of Mandamus, urging that the employer is not entitled to mandamus relief because: The Arbitration Agreement was void under Tex. Lab.Code Ann. § 406.033(e); there was evidence upon which the trial court could have concluded that the Agreement was fraudulently obtained; there was evidence upon which the trial court could have concluded that the Agreement was illusory; there was evidence that the employer's benefit program was unconscionable; and there was evidence from which the trial court could have concluded that the FAA did not apply in this case. In addition, Juarez argues that Border Steel is precluded from seeking enforcement of the Agreement by the doctrine of laches and denies that he ratified the Agreement by accepting benefits under the Plan.

## DISCUSSION

 A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). With respect to resolution of factual issues or matters within the trial court's discretion, we may not substitute our judgment for that of the trial court. *Id.* at 839–40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* at 840. We will not disturb a trial court's decision, unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the resolution of legal issues, our review is much less deferential. *Id.* A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

■ We will first consider Juarez's argument that Border Steel did not engage in interstate commerce, so that the FAA does not govern the Agreement. In its motion to compel, Border Steel asserted the FAA applies because: (1) The text of the Arbitration Agreement provides that the Federal Arbitration Act governs the interpretation, enforcement, and judicial proceedings under the Agreement; and (2) Border Steel's business involves interstate commerce.

■ Absent certain exceptions not applicable to this proceeding, the FAA applies to all suits in state or federal court, when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992) (orig.proceeding). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *In re December Nine Co.,* 225 S.W.3d 693, 696 (Tex. App.-El Paso, 2006, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; it only requires that commerce be involved or affected. *Id.* (citing *In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex.1999) (orig.proceeding)).

■ The issue is not the extent to which the parties' dispute affects interstate commerce, but whether their dispute concerns a transaction that affects interstate commerce. *In re Big 8 Food Stores, Ltd.,* 166 S.W.3d 869, 879 (Tex.App.-El Paso 2005, orig. proceeding). In other words, the term "commerce," as it defines the boundaries of the FAA, is coextensive with Congressional authority to regulate under the Commerce Clause of the United States Constitution.[4] *Id.* " 'No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause.' " *Id.* (quoting *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 553, 64 S.Ct. 1162, 1173, 88 L.Ed. 1440 (1944)). Some of the activities that can serve as evidence of interstate commerce include headquarters located in another state, transportation of materials across state lines, manufacture of parts in a different state, billings prepared out-of-state, or interstate mail and telephone calls in support of a contract. *Id.*

The Border Steel Benefit Plan Summary includes a recitation that the Agreement is governed by the FAA and specifies that the participant employee agrees that the company is engaged in interstate commerce.[5] The Plan Summary indicates that the company is involved in interstate commerce by virtue of its "purchasing goods and services from outside Texas which are shipped to Texas; utilizing the interstate mail, telephone and highway systems; operating facilities serving people from various states; and recruiting and advertising outside Texas." In *In re Big 8 Food Stores,* this Court determined that such language established that the employer was engaged in interstate commerce and held that, absent evidence to the contrary, "the relationship between an employer who is regularly engaged in activities re-

---

**4.** "The FAA 'extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach.' " *In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67, 69 (Tex.2005) (quoting *In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex. 1999) (orig.proceeding)).

**5.** The Spanish version of the "Waiver and Arbitration Agreement," which Juarez signed, incorporates the provisions in the Benefit Plan Summary, which specifies that the Agreement is governed by the FAA. The waiver also asserts that Border Steel is engaged in interstate commerce.

lated to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores*, 166 S.W.3d at 880.

In his response, Juarez argues there is no evidence of the indicators of interstate commerce as listed above. Specifically, Juarez contends that the record shows that all Border Steel employees worked in El Paso, and there is no evidence of employees working in any other state. We disagree with Juarez's argument, both because the language in the summary clearly states that the company is involved in interstate commerce and because, even if no Border Steel employee worked outside the State of Texas, that fact alone would not preclude the company's affecting interstate commerce. There are numerous ways, independent of where employees perform their duties, for an entity to affect interstate commerce. Miguel Isla, Border Steel's Human Resources Manager, represents that the company's daily operations involve receipt of products from, and delivery of products to, points outside of Texas.[6] This Court has also recognized that transportation of materials across state lines and the use of interstate mail are activities affecting interstate commerce. *In re Big 8 Food Stores*, 166 S.W.3d at 879. Based on this record, the relationship between Border Steel and Juarez unquestionably affected interstate commerce, and the FAA applies. *See In re December Nine*, 225 S.W.3d at 697.

Having determined that the FAA is the governing statute in this case, we will address Juarez's argument that the waiver is void and unenforceable because it violates the non-waiver provision of Tex. Lab.Code Ann. § 406.033(e). The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. This language represents a federal policy favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary. *In re R & R Pers. Specialists of Tyler, Inc.*, 146 S.W.3d 699, 703 (Tex.App.-Tyler 2004, orig. proceeding) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). This section creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the FAA. *Id.* Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, the FAA "takes precedence over state attempts, legislative or judicial, to undercut the enforceability of arbitration agreements." *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 374 (Tex.App.-Texarkana 1999, orig. proceeding [mand. denied]); *accord, Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Tipps*, 842 S.W.2d at 271. Therefore, the FAA preempts inconsistent state statutes.[7] *In*

---

**6.** For decades, the National Labor Relations Board has, with United States Supreme Court approval, based its determination of whether to exercise federal jurisdiction over labor disputes on whether, inter alia, the employer purchases goods directly from, or delivers goods directly to, points outside the state where the controversy arose. *See, e.g.,* 23 NLRB Ann. Rep. 8 (1958); *cf. Local 438, Constr. & Gen. Laborers' Union v. Curry*, 371

U.S. 542, 545 n. 2, 83 S.Ct. 531, 534 n. 2, 9 L.Ed.2d 514 (1963).

**7.** *Cf. Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). That case arose under the California Franchise Investment Law, Cal. Corp.Code §§ 31000 *et seq.*, which provided certain protections to franchisee investors. Section 31512 provided that "any condition, stipulation or provision purporting to bind any person acquiring any

*re Turner Bros. Trucking Co.*, 8 S.W.3d at 374.

The Texas Labor Code provides that any agreement by an employee to waive a cause of action or any right described in section 406.033(a),[8] which is executed before the employee's injury or death, is void and unenforceable. *See* Tex. Lab.Code Ann. § 406.033(e).[9] We have already determined that the provisions of the FAA are applicable to this case, based on Border Steel's interstate activities. Therefore, the FAA preempts the application of the Texas non-waiver provision to prevent the enforcement of the Arbitration Agreement at issue here.[10] *See Tipps*, 842 S.W.2d at 271.

We now turn to the merits of the motion to compel arbitration and the Arbitration Agreement.

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding). The law presumes the existence of an arbitration agreement, and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration. *Id.* An agreement to arbitrate is valid and enforceable, unless some ground exists at law or in equity for the revocation of any contract, such as fraud or unconscionability. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex.2005) (per curiam). State contract law determines the validity of an arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex.2002). Whether there is an

---

franchise to waive compliance with any provision of this law or any rule or order hereunder is void." When certain franchisees of Southland Corp. (7–Eleven Stores) sued the franchisor for alleged violations of the Investment Law, Southland sought, under the franchise agreements, to compel arbitration. In reliance upon section 31512, the California Supreme Court refused to compel the plaintiffs to resort to arbitration. *See* 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192 (1982). In *Keating*, the United States Supreme Court reversed, holding:

In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We hold that § 31512 ... violates the Supremacy Clause.

465 U.S. at 16, 104 S.Ct. at 861 (footnotes omitted).

8. Subsection (a) states:

(a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;

(2) the employee assumed the risk of injury or death; or

(3) the injury or death was caused by the negligence of a fellow employee.

Tex. Lab.Code Ann. § 406.033(a).

9. Subsection (e) provides:

(e) A cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death. Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable.

Tex. Lab.Code Ann. § 406.033(e).

10. Insofar as we have been able to ascertain, only one other Texas court has considered the precise issue we are asked to decide herein, to wit, whether, under these circumstances, Tex. Lab.Code Ann. § 406.033(e) is preempted by the FAA. *See In re R & R Pers. Specialists, Inc.*, 146 S.W.3d 699 (Tex.App.-Tyler 2004, orig. proceeding) (finding Texas statute preempted by FAA). Consistent with her ethical obligations to the Court, counsel for Juarez called this case to the Court's attention at oral argument, but urged us not to follow our sister court's conclusion. While we applaud counsel's ethical behavior, we respectfully reject her request.

enforceable agreement to arbitrate is a question of law, which we review *de novo*. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). If there is a valid agreement, then the burden shifts to the party opposing arbitration to raise an affirmative defense. *Id.*

Juarez raised several affirmative defenses to the enforceability of the Arbitration Agreement. He argues that the Agreement was obtained through the use of fraud and unconscionable means and that Border Steel's obligations under the Agreement and the Benefit Plan were illusory. Juarez also argues that Border Steel's right to mandamus relief is barred by the doctrine of laches. We will address each defense in turn.

■ Juarez argues that the trial court did not abuse its discretion, because there is evidence in the record on which the court could have concluded that the Arbitration Agreement was fraudulently obtained.[11]

To prove that the agreement was obtained by fraud, Juarez must show that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly, without knowledge of the truth, and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d at 758.

Border Steel argues that there is no evidence that the Arbitration Agreement and Waiver was fraudulently obtained, because the document which Juarez signed clearly stated:

> I acknowledge and agree that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and without duress, pressure or coercion

---

11. Several years ago, in *In re Big 8 Food Stores*, this Court was presented with similar arguments in defense of a similar arbitration agreement in an employment context. In that case, the injured employee argued that an arbitration agreement was the result of procedural unconscionability and was therefore unenforceable, because the employee did not understand the implications of her agreement to arbitrate employment disputes. *In re Big 8 Food Stores*, 166 S.W.3d at 877. In our decision that the employee was bound by her agreement to arbitrate, we explained:

> In determining whether a contract is unconscionable or not, the court must look to the entire atmosphere in which the agreement was made; the alternatives, if any, which were available to the parties at the time of the making of the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy; and, whether the contract is oppressive or unreasonable. At the same time, a party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts. In the absence of any mistake, fraud, or oppres-

sion, the courts, as such, are not interested in the wisdom or imprudence of contracts and agreements voluntarily entered into between parties *compos mentis* and *sui juris*. Such parties to contracts have the right to insert any stipulations that may be agreed to, provided they are neither unconscionable nor otherwise illegal or contrary to public policy. It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily. A contract is not unenforceable on the ground that it yields a return disproportionate to the expenditures in time and money, where there has been no mistake or unfairness and the party against whom it is sought to be enforced has received and enjoyed the benefits.

> *In re Big 8 Food Stores*, 166 S.W.3d at 877–78 (citing *Marsh v. Marsh*, 949 S.W.2d 734, 740 (Tex.App.-Houston [14th Dist.] 1997, no pet.), and *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ.App.-Texarkana 1975, no writ)).

from any person and without relying on any promises or representation by [Border Steel] other than those contained in this Agreement itself. I am not under the influence of alcohol or any other impairing substance, nor am I under any mental incapacity that would affect me at the time of signing the Agreement. I am aware of the consequence of signing this Agreement and, to the extent that I have deemed necessary, I have consulted with an attorney. Finally I agree and acknowledge that signing this Agreement is *not* a condition of my employment at [Border Steel].

(Emphasis in original).

In addition, the Arbitration Agreement states, "**I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all the claims covered by this Agreement . . .**" (bold in original).

 One who signs a contract is legally held to have known what words were used in the contract, to have understood their meaning, and to have comprehended the legal effect of the contract. *Id.* at 878. As such, even proof of illiteracy does not relieve a contracting party of the consequences of the agreement. *Id.* "Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice." *Vera v. North Star Dodge Sales, Inc.,* 989 S.W.2d 13, 17 (Tex.App.-San Antonio 1998, no pet.).

Despite the language in the Waiver and Agreement, Juarez argues that the deposition testimony of former Border Steel Loss Control Administrator Fernando Villagran is evidence that the Agreement was obtained by fraudulent means. Villagran testified that, as a new Border Steel employee, he was given a stack of employment documents, including the Employee

Benefit Plan, and was expected to sign them without time for review and without explanation. Juarez contends this is the way the Plan was given to all employees.

Juarez continues that it was Villagran's responsibility to meet with injured workers and that Villagran's testimony indicated he did not understand what arbitration was and was unable to educate workers on their rights and responsibilities under the plan. Villagran's duties included keeping a log of expenses per employee accident at Border Steel, and he was the first person to check a potentially-injured employee following an accident to determine whether the employee needed medical care. He also tracked how many doctor's appointments an injured employee attended after an injury, until the employee was either released from the doctor's care or determined to be incapacitated.

There is no indication that Villagran was involved in the informational meetings Border Steel organized when the Plan was introduced. Villagran was not the person who presented the Plan to Juarez, and he did not witness Juarez's signing the Agreement.

 Whatever Villagran's experience as a new Border Steel employee was, the record shows that at the time Border Steel introduced its new Employee Benefit Plan to its employees, Juarez had been working for the company for over twenty years. There is evidence that Juarez received information about the new Plan from several "roll out" meetings. At the roll out meetings, the Benefit Plan was explained via PowerPoint presentation, with Spanish translation, and written summaries in both English and Spanish. The record does not show that a material misrepresentation was made to Juarez regarding his rights under the Plan. There is no record that Villagran made any statement to Juarez

regarding the plan. Even assuming that Villagran misunderstood what arbitration was and did not know that an employee gave up his right to a jury trial by agreeing to arbitrate disputes with Border Steel, there is no record that Juarez relied on any statement made by Villagran when Juarez agreed to the Plan. Therefore, Juarez did not show that the Agreement was obtained by fraud, and the Arbitration Agreement is not unenforceable on that ground.[12]

▮▮▮▮▮ Juarez also argues that the Arbitration Agreement is unenforceable due to procedural unconscionability. As an affirmative defense to an Arbitration Agreement, unconscionability involves two potential aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *See In re Halliburton Co.,* 80 S.W.3d at 571. The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement. *Id.; In re FirstMerit Bank,* 52 S.W.3d at 756.

Juarez contends that the evidence of Border Steel's unconscionable methods in procuring the Arbitration Agreement includes the fact that the Plan was presented to employees in presentations that lasted thirty minutes or less. He continues that, during the meetings the PowerPoint presentation was only provided in English and orally translated into Spanish by a non-certified translator. Finally, he argues that the "cursory manner in which the Plan was placed before employees" is evidenced by Fernando Villagran's lack of knowledge about arbitration, in addition to the employer's failure to inform the employees about how the Agreement could be amended or terminated or how Plan benefits would be affected in the event Border Steel entered bankruptcy.

There is nothing in the record to indicate, and Juarez does not argue, that he lacked the mental capacity to enter into the contract. As we have discussed, the language of the Agreement provided that the employee voluntarily participated in the Plan and understood the consequences of the Agreement. There is undisputed evidence that Border Steel provided a Spanish version of the Waiver and Arbitration Agreement, which Juarez signed. It is also undisputed that, following his injury, Juarez accepted benefits for medical expenses and disability payments under the Plan. Consequently, the fact that Juarez now contends that the terms of the Agreement were not sufficiently explained or that he did not understand its consequences is immaterial to the validity of his agreement to arbitrate. *See In re Big 8 Food Stores,* 166 S.W.3d at 878. Furthermore, assuming for a moment that the Agreement were unenforceable, Juarez ratified it by accepting and retaining benefits under the Plan following his injury. *Id.* (citing *Land Title Co. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756–57 (Tex.1980), and *Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892, 895 (1960)).

---

12. Border Steel argues, in part, that the parol evidence rule precludes the court's considering evidence contrary to the unambiguous terms of the Agreement. Generally, extrinsic evidence is not admissible to vary or add to the terms of an unambiguous agreement. *See National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 521 (Tex.1995). However, extrinsic evidence is admissible in cases where there are allegations of fraudulent inducement. *See Gonzalez v. United Bhd. of Carpenters & Joiners,* 93 S.W.3d 208, 211 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because Juarez argues that he was induced to enter into the contract by fraudulent and unconscionable means, we include extrinsic evidence in our analysis.

■ Juarez next argues the Agreement is unenforceable because the employer's obligations under the Benefit Program were illusory.

■ The Texas Supreme Court has held that a promise to submit employment disputes to arbitration constitutes sufficient consideration for a return promise to do the same. *J.M. Davidson, Inc.*, 128 S.W.3d at 228 (citing *In re Halliburton*, 80 S.W.3d at 569). In other words, neither promise to arbitrate is illusory, because both parties are bound by their respective promises to arbitrate. *See id.* Furthermore, an agreement to arbitrate is not illusory, despite being formed in an at-will employment relationship, if the promises to arbitrate do not depend on continued employment. *In re Halliburton*, 80 S.W.3d at 569. The Arbitration Agreement which Juarez signed expressly provided that the parties' obligations to arbitrate disputes would survive the employee's termination from the company. The Agreement also provided that it would not be revoked or modified except by "mutual consent" evidenced by a writing signed by both the employee and the company. Therefore, the agreement to submit employment disputes to arbitration was not illusory and is not unenforceable on that ground.

■ Finally, Juarez argues that Border Steel's seven-month delay in filing its petition for mandamus relief constitutes laches, barring Border Steel from relief by mandamus. Although mandamus is a legal remedy, it is largely controlled by equitable principles. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993); *In re SCI Tex. Funeral Servs., Inc.*, 198 S.W.3d 14 (Tex.App.-El Paso 2006, orig. proceeding). One such principle is that equity aids the diligent and not those who slumber on their rights. *Rivera*, 858 S.W.2d at 367. A party asserting the defense of laches must show both an unreasonable delay by the mandamus petitioner and harm resulting from the delay. *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex. 1989); *Sanchez v. Hester*, 911 S.W.2d 173, 177 (Tex.App.-Corpus Christi 1995, orig. proceeding).

The trial court entered its order denying the motion to compel arbitration on April 6, 2006. Border Steel filed its petition for mandamus relief on November 14, 2006. Juarez analogizes this case to *In re SCI Tex. Funeral Services*, 198 S.W.3d 14, where this Court concluded that a six-month delay constituted laches and prohibited the relator from seeking mandamus relief. The relator in that case provided this Court with no explanation for the delay in filing its mandamus petition. *Id.* In the case before us, Border Steel argues, and the record shows, that there was no unreasonable delay in filing the petition, as the parties attempted to mediate the dispute through October 2006. Border Steel filed its petition for writ of mandamus in the month following the unsuccessful mediation. In addition, Juarez does not explain how the seven-month delay has resulted in harm to him. As Juarez has failed to carry his burden on either element of his laches defense, it does not bar Border Steel's right to mandamus relief.

■ In conclusion, we find that a valid and enforceable Arbitration Agreement exists between the parties. Juarez has not proven his affirmative defenses to avoid enforcement of the Arbitration Agreement. Therefore, the trial court clearly abused its discretion by denying Border Steel's motion to compel arbitration. We sustain Border Steel's sole issue. A party erroneously denied the right to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is appropriate. *See Tipps*, 842 S.W.2d at 272–73.

Accordingly, we conditionally grant the writ of mandamus and direct the trial court to grant the motion to compel arbitration. *See* Tex.R.App. P. 52.8(c). The writ will issue only if the trial court fails to do so.