COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






IN RE: POLYMERICA, LLC d/b/a
GLOBAL ENTERPRISES, INC.,


 Relator.
§


 


§


 


§


 


§


 


§


 


 § 





 

 No. 08-08-00070-CV


 AN ORIGINAL PROCEEDING


 IN MANDAMUS
 





OPINION ON PETITION FOR WRIT OF MANDAMUS


 Relator, Polymerica, LLC d/b/a Global Enterprises, Inc. (Global), seeks a writ of mandamus
ordering Respondent, the Honorable M. Sue Kurita, Judge of the County Court at Law Number Six
of El Paso County, to grant Relator's Motion to Compel Arbitration. Finding an abuse of discretion,
we conditionally grant the petition for writ of mandamus in part.

I. FACTUAL AND PROCEDURAL BACKGROUND


 Global Enterprises, a manufacturer of plastics and automotive interior products, is based in
El Paso. Real Party in Interest, Angelica Soltero, was hired by Global in 1997 to work as a human
resources manager. In 2002, Global contracted with dmDickason Staff Leasing Company (Dickason)
to manage Global's human resources department. In July of 2002, Dickason required its employees,
including Soltero, to sign an employment agreement. Soltero did so. This agreement provided that
Soltero became a joint employee of Global and Dickason on July 12, 2002. The employment
agreement contained an arbitration clause which provided:

 Arbitration. All disputes between you and dmDickason shall be resolved
exclusively through arbitration under the Federal Arbitration Act, the American
Arbitration Association's National Rules for the Resolution of Employment
Disputes, and the dmDickason Dispute Resolution Plan found in this handbook,
following this Employment Agreement. The decision of the arbitrator shall be final
and binding and may be enforced in any court with jurisdiction. dmDickason will
provide you with a copy of the then current Dispute Resolution Plan at any time, on
your request reasonably made.


 Dickason also distributed a Dispute Resolution Plan, which also contained an arbitration
clause that Soltero was required to sign. Once again, she did so. The Dispute Resolution Plan
provided, in pertinent parts:

 Application. This Plan applies to all disputes between applicants for employment, 
Employees or former Employees of Company, whether raised during or after
employment. This Plan applies to any claim against any successor, representative,
agent, employee, officer, director, stockholder, administrator, executor or assignee
of Employee or dmDickason (Company).


. . .

 

 "Covered Dispute" means any legal or equitable claim, demand or controversy
between Employee and dmDickason and/or Global Enterprises. Covered Dispute
includes all claims based on any statute, regulation, common law tort, contract or
alleging violation of any other legal obligation between Employee and dmDickason. 
Covered Dispute[s] specifically include, but are not limited to, any disputes related
to: (a) this Plan; (b) hiring, discharge, promotion, demotion, transfer, reassignment,
discipline, evaluation, wages, bonuses, commissions, compensation, benefits, terms
and conditions of employment; (c) any employee benefits, including, for example,
retirement benefits or savings plans; (d) claims of discrimination, for example, race,
sex, national origin, disability, color, age, harassment or retaliation; (e) statutory
claims related to employment, including employment discrimination, retaliation or
harassment; (f) breach of contract claims; (g) defamation, negligence or other torts;
and (h) any other matter based on related to or growing out of the employment
relationship. Covered Disputes specifically include, but are not limited to disputes
related to: wages, benefits, discrimination, wrongful discharge, sexual harassment,
workers' compensation retaliation, Title VII of the Civil Rights Act of 1964, Age
Discrimination in Employment Act, Americans with Disabilities Act, 42 U.S.C. §
1981, Fair Labor Standards Act, Family & Medical Leave Act, Employee Retirement
Income Security Act, Texas Labor Code, defamation invasion of privacy, punitive
damages, or intentional infliction of emotional distress.


 "Employee" means any current or former employee who was an employee on or
after the effective date of this Plan, together with that person's administrators,
executors, heirs and assigns. Employee includes but is not limited to, regular
employees, temporary employees, and assigned or leased employees, including
Management, and Executives of Company. 


 The Dispute Resolution Plan also provided:


 Arbitration Procedures. [A]ny unresolved dispute involving legally protected
rights shall be resolved exclusively through binding arbitration under the Federal
Arbitration Act . . . .


 In 2003, Global distributed an employee handbook, and required Soltero and all other
employees to acknowledge receipt of the handbook. Soltero signed an acknowledgment that she had
received the handbook. The handbook provided that:

 This Employee Handbook is a revised version of any previous Employee Handbook
issued by the Employer. This Handbook supercedes and revokes all prior versions
of a Handbook or any memo, bulletin, policy or procedure, on any subject discussed
in this Handbook that has been issued prior to the date occurring below. . . .

 

. . .



 In addition, I understand that this Handbook states Global's policies and practices in
effect on the date of this publication. I understand that nothing contained in the
Handbook may be construed as creating a promise of future benefits or a binding
contract with Global for benefits, or for any other purpose. I also understand that
these policies and procedures are continually evaluated and may be amended,
modified or terminated at any time.


 The following section, entitled "Dispute Resolution and Arbitration," provided:

 

 All disputes between you and dmDickason/Global shall be resolved exclusively
through arbitration under the Federal Arbitration Act. All employees are required to
sign a Dispute Resolution Plan Agreement, as a condition of employment, during
their new employee orientation on the first day of employment.


 dmDickason/Global's Dispute Resolution Plan and Arbitration Agreement is
intended to provide a method for solving problems that is fair, prompt and effective. 
Under this plan, you can bring the same kinds of claims and obtain the same kinds
of relief that you could in court. Arbitration provides a way to have a legal dispute
quickly heard by a trained person under less formal rules (and for a lot less cost) than
would apply in a courtroom.


 Your decision to accept employment with Global, or to continue your current
employment after the effective date of the Dispute Resolution Plan, will mean that
you have agreed to, and are bound by the Plan. All disputes between you and
dmDickason, and/or you and Global shall be resolved exclusively through arbitration
under the Federal Arbitration Act, the American Arbitration Association's National
Rules for the Resolution of Employment Disputes, and dmDickason's dispute
resolution plan that is given to all employees during their initial employment
orientation with dmDickason. The decision of the arbitrator shall be final and
binding and may be enforced in any court of jurisdiction. dmDickason will provide
you with new or replacement copies of the then current dispute resolution plan at any
time, on your request reasonably made.


 In June of 2005, Global began an effort to optimize its El Paso operations and to reduce costs. 
As part of this initiative, the decision was made to terminate Global's contract with Dickason, and
to resume full management responsibility over its Human Resources Department. On December 31,
2005, Global terminated its contract with Dickason. On January 4, 2006, Global terminated
Soltero's employment.

 On January 31, 2007, Soltero filed a lawsuit against Global, alleging wrongful termination,
in part because of her national origin and retaliation resulting from her reports of sexual harassment
on the part of the company president, Manuel Gutierrez. She did not sue Dickason. These claims
were made under the auspices of the Texas Labor Code, sections 21.001 et seq. Soltero alleged
damages proximately caused by Global's actions, to include back pay and benefits, front pay and
benefits, compensatory damages in the past and future, reasonable and necessary attorney's fees,
exemplary damages, prejudgment and post-judgment interest as allowed by law, cost of Court and
other compensatory damages. An award was sought for all the above damages in an amount within
the jurisdictional limits of the Court.

 As part of the discovery process, Soltero's deposition was taken on October 4, 2007. In her
deposition, she stated that she was retaliated against after she filed a complaint against Manny
Gutierrez. She did not receive any raises after filing the complaint. She also stated that she was
undercut by others regarding her duties as human resources manager. Further, she testified that she
did not trust the human resources support person at Dickason, as that individual was allegedly
colluding with others to fire people who filed workers' compensation claims. Soltero also stated that
she understood that disputes involving the leased employees would be submitted to arbitration. 
Sometime later, she clarified that statement in a written correction, stating that any claims against
Dickason would be submitted to arbitration.

 Valerie Scott replaced Soltero as Global's human resources manager. Scott stated that she
was unaware of any arbitration agreement after the termination of Global's relationship with
Dickason. She agreed that from January 2006 until July 2007, when Global created a new arbitration
agreement, there was no arbitration agreement in effect.

 In response to the lawsuit, Global filed "Defendants' Motion to Compel Arbitration and Stay
Proceedings." Soltero filed a response and, after considering the evidence and arguments of counsel,
the trial court denied the motion. Global filed a motion for the court to reconsider its ruling, and
Soltero again filed a response. The trial court denied the motion to reconsider.

II. DISCUSSION


 Mandamus is an extraordinary remedy, available solely to correct a clear abuse of discretion,
when there is no other adequate remedy by appeal, as is the case when a party is erroneously denied
its contractual arbitration rights under the Federal Arbitration Act. In re American Nat'l Ins. Co.,
242 S.W.3d 831, 833-34 (Tex. App.--El Paso 2007, orig. proceeding). A writ of mandamus will
issue if the trial court has clearly abused its discretion and there is no other adequate remedy at law. 
Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.1992) (orig. proceeding); In re Border Steel, Inc.,
229 S.W.3d 825, 829 (Tex. App.--El Paso 2007, orig. proceeding). Regarding the resolution of
factual issues or matters within the trial court's discretion, we may not substitute our judgment for
that of the trial court. Border Steel, 229 S.W.3d at 829. The relator is required to demonstrate that
the trial court could reasonably have reached only one decision. A trial court's decision will not be
disturbed unless it is shown to be arbitrary and unreasonable. With respect to the resolution of legal
issues, however, our review is much less deferential; a trial court has no discretion in determining
what the law is or in applying the law to the facts. Thus, a clear failure by the trial court to analyze
or apply the law correctly will constitute an abuse of discretion. Id.

 A party seeking to compel arbitration is required to establish the existence of a valid
arbitration agreement and show that the claims raised in the pleadings fall within the scope of that
agreement. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding); Border
Steel, 229 S.W.3d at 832; In re Bunzl USA, Inc., 155 S.W.3d 202, 209 (Tex. App.--El Paso 2004,
orig. proceeding [mand. denied]). The law presumes the existence of an arbitration agreement, and
any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration. 
Border Steel, 229 S.W.3d at 832. An agreement to arbitrate is valid and enforceable, unless some
ground, such as fraud or unconscionability, exists at law or in equity for the revocation of any
contract. State contract law determines the validity of an arbitration agreement. Id.

 Whether there is an enforceable agreement to arbitrate is a question of law, which we review
de novo. Id. at 832-33. If there is a valid agreement, then the burden shifts to the party opposing
arbitration to raise an affirmative defense. Id. at 833.

 Global asserts that arbitration should be compelled for three reasons: (1) estoppel allows
Global to enforce the arbitration agreement, as Soltero received direct benefits under the arbitration
agreements during her employment; (2) equitable estoppel requires Soltero to arbitrate her claims
against Global, because it was a joint employer of Soltero and it is entitled to enforce the arbitration
agreements; and (3) Global is an intended third-party beneficiary of the arbitration agreements
between Soltero and Dickason.

 Initially, we must address Soltero's assertion that Global has waived the contentions
concerning direct-benefits estoppel and the allegation that Global is an intended third-party
beneficiary of the arbitration agreements between Soltero and Dickason.

 Global asserts in its petition for writ of mandamus that two separate avenues exist to establish
direct-benefits estoppel. First, a party can be compelled to arbitrate, if that party seeks, through the
claim, to derive a direct benefit from the contract that contains the arbitration provisions. Second,
a party can be compelled to arbitrate, if that party deliberately seeks and obtains substantial benefits
from the contract itself. It is this second theory that Global insists applies in this case. Global
maintains that Soltero received substantial and direct benefits under the arbitration agreements which
are involved in the case, in that she received payment and wages under the joint-employment
agreement and Dispute Resolution Plan.

 Tex. R. App. P. 33.1 requires that a party must first present its complaint to the trial court and
obtain a ruling on that complaint, in order to preserve the issue on appeal. This requirement applies
to mandamus proceedings. In re East Tex. Med. Ctr. Athens, 154 S.W.3d 933, 936 (Tex. App.--Tyler 2005, orig. proceeding); West v. Solito, 563 S.W.2d 240, 244-45 (Tex. 1978) (orig.
proceeding).

 Global responds that it preserved this issue by its reference to In re Dallas Peterbilt, Ltd., 196
S.W.3d 161, 24 Indiv. Empl. Rts. Cas. (BNA) 1304 (Tex. 2006). Global cited this case in a portion
of its motion to compel arbitration discussing the contention that the parties had agreed to arbitrate
their disputes. Dallas Peterbilt held that, regarding the acceptance of the agreement, the fact that
the at-will employee signed, accepted, and continued employment under the arbitration agreement
constituted automatic coverage by the arbitration agreement, as a matter of law. 196 S.W.3d at 163. 
While this case did not involve a non-signatory to an arbitration agreement's being allowed to
enforce such an arbitration agreement, we find that the reference to the employee's accepting a
benefit under the contract put the trial court on notice as to Global's claim, given the context of the
litigation. Accordingly, we conclude that this issue was preserved on appeal.

 However, we reach a different result with regard to the contention that Global was an
intended third-party beneficiary of the arbitration agreements between Soltero and Dickason. As
stated, a party must first present its complaint to the trial court and obtain a ruling on that complaint
in order to preserve the issue on appeal in mandamus proceedings. In re East Tex. Med. Ctr. Athens,
154 S.W.3d at 936. It does not appear anywhere in the record that Global raised this contention in
the trial court. Accordingly, Global has failed to preserve this issue on appeal.

 We also note that Soltero asserts that the provisions of the Employee Handbook nullified and
superceded the arbitration agreements with Dickason. However, the above-quoted provisions of the
handbook appear to reference the arbitration provisions and indicated that disputes between the
employee and Global and Dickason were to be arbitrated pursuant to the Dispute Resolution Plan. 
We fail to see how the handbook nullifies the arbitration agreements; rather, it appears to reference
them. 

 In certain instances, a nonparty may be compelled to arbitrate, if it deliberately seeks and
obtains substantial benefits from the contract itself. The analysis involved focuses on the nonparty's
conduct during the performance of the contract. In re Weekley Homes, L.P., 180 S.W.3d 127, 132-33
(Tex. 2005) (orig. proceeding). Furthermore, a non-signatory may be bound to an arbitration
agreement on the ground of equitable estoppel. In re Kellogg Brown & Root, Inc., 166 S.W.3d 732,
739 (Tex. 2005) (orig. proceeding). Federal courts have limited estoppel in that context to cases
involving non-signatories who, during the life of the contract, have embraced the contract, seeking
to derive direct benefits from it, but then, during litigation, attempt to repudiate the arbitration clause
in the contract. Id. It has been held that, where a party has received payments under a contract, it
was estopped from claiming that a non-signatory to the contract could not invoke the arbitration
clause in the contract. TC Arrowpoint, L.P. v. Choate Constr. Co., No. 3:05-CV-00267, 2006 WL
91767, at *12 (W.D.N.C. Jan. 13, 2006).

 Global asserts that Soltero received payment and wages under the joint-employment
agreement and Dispute Resolution Plan. Global also maintains that Soltero was a signatory to the
Dispute Resolution Plan, which stated that acceptance was a condition of her employment. She
continued to work as a joint employee of Dickason and Global for approximately three years. As
such, Soltero's continued employment was sufficient to bind her to the terms of the agreements. See
Dallas Peterbilt, 196 S.W.3d 161. Soltero counters that direct-benefits estoppel does not apply,
because her claims centered on statutory violations and are therefore independent of the arbitration
agreement. However, under the theory of direct-benefits estoppel urged by Global, the theory applies
in circumstances other than where benefits from a contract are sought through legal action. That is,
a nonsignatory who deliberately seeks or obtains substantial benefits from the contract itself may be
compelled to arbitrate claims against a signatory to the contract. The reviewing court's analysis
focuses on the nonparty's conduct during the performance of the contract. See St. Clair v. Brooke
Franchise Corp., No. 2-06-216-CV, 2007 WL 1095554, at *5 (Tex. App.--Fort Worth Apr. 12, 2007,
no pet.).

 Here, Soltero received benefits under the joint-employment agreement and Dispute
Resolution Plan. We find that under this substantial benefits type of equitable estoppel, the court
should have granted the motion to compel arbitration. (1) However, this is true regarding only those
claims arising during the period the arbitration agreements were in effect. We do not perceive that
Global can enforce the arbitration agreements for those claims arising from the alleged wrongful
termination occurring after the operating agreement between Global and Dickason ended. See In re
Neutral Posture, Inc., 135 S.W.3d 725, 730 (Tex. App.--Houston [1st Dist.] 2003, orig. proceeding).

III. CONCLUSION


 We conditionally grant Global's petition in part, insofar as it pertains to those matters
referenced that are alleged to have occurred prior to the termination of the joint agreement between
Global and Dickason, and we instruct the trial court to vacate its order denying Global's motion to
compel arbitration to that extent, to issue an order compelling Soltero to arbitrate those claims, and
to stay all proceedings pending arbitration. Only if the trial court fails to comply with these
directions shall we instruct the clerk to issue the writ.


 KENNETH R. CARR, Justice


November 25, 2008


Before McClure, J., Carr, J., and Gomez, Judge

Gomez, Judge, sitting by assignment

1. Global also raises a type of equitable estoppel revolving around substantially interdependent and concerted
misconduct between Dickason and Global. Soltero asserts that the Texas Supreme Court has held that this theory of
equitable estoppel does not provide a sufficient basis to compel arbitration. See In re Merrill Lynch Trust Co. FSB, 235
S.W.3d 185, 191 (Tex. 2007) (orig. proceeding). However, given our disposition regarding Global's equitable estoppel
claim, we need not address this contention.