COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS







IN RE: DATAMARK, INC.,



 Relator.
§


 


§


 


§


 


§


 


§


 


 § 



No. 08-07-00328-CV



AN ORIGINAL PROCEEDING

 IN MANDAMUS





O P I N I O N



 This is a petition for a writ of mandamus arising from the trial court's denial of a motion to
compel arbitration under the Federal Arbitration Act. Finding no abuse of discretion, we deny relief.

FACTUAL AND PROCEDURAL BACKGROUND


 Joana Perez began working for Datamark in January 2005. She received two booklets at
orientation, a "Non-Staff Employee Handbook" and a "Summary Plan Description." She did not
read either one of them. According to the Human Resources Director, Perez also received a
"Problem Resolution Program" booklet (the PRP) that described company dispute resolution
policies and procedure. Perez denied receiving it, but she did sign the "Receipt and Arbitration
Acknowledgment" which was maintained in her personnel file. Her signature acknowledged that
she had received and read (or had the opportunity to read) both the "Summary Plan Description" and
the PRP. She also acknowledged that an arbitration policy required the submission of all employee-related disputes to an arbitrator in accordance with the procedures described in the PRP. Datamark
reserved the right to revoke or modify the PRP in writing at any time as long as the writing was
signed by an officer of the company and articulated an intent to revoke or modify a policy. The
interpretation, enforcement, and proceedure under the PRP were governed by the Federal Arbitration
Act.

 Perez learned she was pregnant in August 2005. While employed full-time, she began to
miss work due to pregnancy difficulties. She was discharged on October 21, 2005 and filed suit
alleging unlawful discrimination because of her gender and/or pregnancy. Perez also alleged that
Datamark intentionally or recklessly engaged in extreme and outrageous behavior which caused her
severe emotional distress. 

 Datamark filed a motion to compel arbitration. In her response to the motion, Perez argued
that the arbitration agreement was unenforceable because it was both procedurally and substantively
unconscionable and that the agreement was illusory. Following a hearing, the trial court denied
Datamark's motion to compel. 

ARBITRATION


 In a single issue, Datamark contends that the trial court abused its discretion in denying the
motion because the agreement is enforceable. It focuses its arguments exclusively on the trial court's
oral statement that the agreement was unconscionable because Perez did not receive all of the
paperwork she should have received. But the order at issue is a general one and does not state a
specific basis for the ruling. In her response to the mandamus petition, Perez again alleges that the
agreement is illusory because Datamark could unilaterally change or terminate the agreement without
prior notice to the employees. Datamark has not addressed this argument in its petition.

Availability of Extraordinary Writ


 Mandamus relief is available if a trial court erroneously denies a motion to compel arbitration
under the Federal Arbitration Act. In re Dillard Dept. Stores, Inc., 186 S.W.3d 514 (Tex. 2006),
citing In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). A movant seeking to compel
arbitration by mandamus must prove the existence of an arbitration agreement subject to the FAA. 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). If the agreement is established, the
court must determine whether it covers the non-movant's claims. Id. We may not substitute our
own judgment for that of the trial court with respect to matters within the trial court's discretion. 
In re Border Steel, Inc., 229 S.W.3d 825, 829 (Tex.App.--El Paso 2007, no pet.). The relator must
establish that the trial court could have reasonably reached only one decision. Id. Unless the trial
court's decision is arbitrary and unreasonable, we will not disturb it. Id.

 We must also bear in mind that when a trial court gives an incorrect legal reason for its
decision, we will nevertheless uphold the order on any other grounds presented to the trial court and
supported by the record. See Luxenberg v. Marshall, 835 S.W.2d 136, 141-42 (Tex.App.--Dallas
1992, orig. proceeding), citing Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991);
Guaranty County Mut. Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986). Such is the case here. 

Was the Agreement Illusory?


 An arbitration agreement is valid and the promise to arbitrate is not illusory if the promise
cannot be avoided by amendment or termination. In re Halliburton Co., 80 S.W.3d 566, 569 (Tex.
2002). There, Halliburton retained the right to modify or discontinue the company dispute resolution
plan, but "no amendment shall apply to a [d]ispute of which [Halliburton] had actual notice on the
date of amendment." Id. at 569-70. The plan also provided that "termination shall not be effective
until 10 days after reasonable notice of termination is given to [e]mployees or as to [d]isputes which
arose prior to the date of termination." Id. at 570. The Supreme Court held that Halliburton could
not avoid its promise to arbitrate by amending the provision or terminating it because it required the
company to give employees ten days' notice of any changes. Id. 

 Most courts considering the issue have concluded that if a party retains the unilateral and
unrestricted right to terminate an arbitration agreement, it is illusory. See J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 230 n.2 (Tex. 2003). The contract language in J.M Davidson stated that
"the Company reserves the right to unilaterally abolish or modify any personnel policy without prior
notice." Id. at 229. The Texas Supreme Court reasoned that if this language permitted the employer
to nullify the arbitration agreement, its employees would have received nothing of value in exchange
for their unconditional promises to arbitrate disputes. Id. But it was not clear whether the arbitration
agreement was a personnel policy. The court remanded the case and directed the trial court to
determine whether the "personnel policy" language was intended to cover the arbitration agreement
so that it could be amended unilaterally. Id. at 232. If so, then the agreement would be
unenforceable, due to the absence of mutual consideration. See id.

 In support of her argument that the PRP is illusory, Perez directs us to In re C & H News
Company, 133 S.W.3d 642 (Tex.App.--Corpus Christi 2003, orig. proceeding). There, the
arbitration agreement provided:

 I understand and acknowledge that as a condition of continued employment with
ETD, the company and I have voluntarily promised and agreed to submit all claims
or disputes between us to binding arbitration as provided in the Handbook.


The court of appeals found this language incorporated, by reference, portions of the employee
handbook. The handbook contained a section entitled, "Mutual Arbitration Policy/Procedures" that
outlined the procedures to be used in conducting arbitration, and listed those types of claims and
disputes which were covered by--and excluded from--the agreement to arbitrate. The receipt, signed
by the employee, acknowledged that the handbook consisted of general guidelines which may or may
not be followed in specific cases. The introduction to the handbook explained that the content "may,
and likely will, be changed, modified, deleted or amended from time to time as the [employer] deems
appropriate, with or without prior notification to employees." Id. at 646. Because the employer had
reserved the right to unilaterally amend the arbitration policies and procedures, the court concluded
that the contract was illusory and unenforceable. Id. at 647.

 The PRP here defines those claims which are covered and those which are not. In a section
entitled, "Requirements for Modification or Revocation," the contract provides:

 The Program will survive the termination of your employment. It can be revoked or
modified by the Company at any time in writing signed by an officer of the Company
that specifically states an intent to revoke or modify this Policy. Any such revocation
or modification shall be effective with respect to all requests for arbitration made or
lawsuits filed after the actual date of such revocation or modification. 


 This language gives the company unilateral control to modify or revoke the policy. Datamark
is able to alter it at any time as long as the request is in writing, signed by a company officer, and the
intent to make changes is specifically stated. It does not require that the employees be notified of
the changes and it certainly does not give them prior notice of the employer's intent to change the
agreement. In contrast, Halliburton's dispute resolution program could be terminated ten days after
employees were given reasonable notice, and any modification did not apply to disputes of which
Halliburton had actual notice on the date of the amendment. In re Halliburton Co., 80 S.W.3d at
569-70. These provisions gave Halliburton employees ample time to file any requests for arbitration
and ensured that the company could not avoid the promise to arbitrate.

 Datamark argued at oral argument and in post-submission briefing that the PRP is not
illusory because the company is still bound to arbitrate claims filed before any changes are made. 
We must disagree. Datamark has unilateral control over the agreement and can avoid arbitrating a
dispute if it amends the dispute resolution program before the employee formally requests
arbitration. Because Datamark has the ability to modify or terminate the contract at any time without
giving prior notice to its employees, the promise to arbitrate is illusory and the arbitration agreement
is unenforceable. See In re C & H News Company, 133 S.W.3d at 647. Finding no abuse of
discretion in the denial of the motion to compel, we deny relief.


February 5, 2009 

 ANN CRAWFORD McCLURE, Justice


Before McClure, J., Barajas, C.J. (Ret.), and Gomez, J.

Barajas, C.J. (Ret.), sitting by assignment

Gomez, J., sitting by assignment