**In re NEUTRAL POSTURE, INC. &**
**Rebecca Boenigk, Relators.**

**No. 01–02–00447–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 31, 2003.

Stephen H. Cagle, Peter E. Ormsby, Howrey Simon Arnold & White L.L.P., Houston, for Relator.

Ernest Paul Nycz, Plano, Vivienne M. Ashman, New York, NY, for Real Party In Interest.

Panel consists of Justices HEDGES, KEYES, and LEE DUGGAN*.

## OPINION

LEE DUGGAN, JR., Justice (Assigned).

Relators, Neutral Posture, Inc. and Rebecca Boenigk, plaintiffs below, filed a petition for writ of mandamus complaining about the trial court's [1] April 12, 2002 or-

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The Honorable J.D. Langley, judge of the 85th District Court of Brazos County. The underlying proceeding is trial court number 02–000189–CV–85, styled, *Neutral Posture, Inc. & Rebecca Boenigk v. BodyBilt, Inc., ErgoBilt, Inc., and The American Aribitration Association.*

der granting the motion to compel arbitration filed by the real parties in interest, BodyBilt, Inc. and ErgoBilt, Inc. (collectively, "BodyBilt"),[2] and denying relators' application for temporary and permanent injunctions to enjoin BodyBilt from arbitrating the dispute. In five issues, relators argue that the trial court abused its discretion in denying an injunction and ordering all parties to arbitration because (1) BodyBilt failed to comply with a condition precedent to the arbitration agreement; (2) BodyBilt failed to initiate arbitration before the arbitration agreement expired; (3) BodyBilt failed to give notice of the nature of its claims; and (4) ErgoBilt, Inc. and Rebecca Boegnik were not parties to the arbitration agreement. We conditionally grant the petition for writ of mandamus.

## Background

The facts are essentially undisputed. The underlying proceeding arises from a November 13, 1996 settlement agreement that contains a provision for arbitration. The arbitration provision states that the parties "agree that for a period of five (5) years from the date of this Agreement all disputes and controversies which arise between the Parties shall be submitted to binding arbitration under the Commercial Rules of the American Arbitration Association [AAA]. . . ."

On the evening of November 13, 2001, BodyBilt attempted to initiate 15 separate arbitration proceedings against relators pursuant to the 1996 settlement agreement by faxing 15 demands for arbitration to the AAA in Fresno, California.[3] By letter dated November 14, 2001, the AAA's Western Case Management Center advised the parties that it had received the demands for arbitration on November 14, 2001 and was forwarding them to its Central Case Management Center located in Dallas, Texas. On November 15, 2001, BodyBilt forwarded copies of the 15 demands for arbitration to relators by overnight delivery. Relators received the copies of BodyBilt's demands for arbitration on November 16, 2001.

On February 15, 2002, relators filed the underlying proceeding for temporary and permanent injunctions to prohibit BodyBilt from arbitrating. BodyBilt responded and moved to compel arbitration and to stay the proceedings in the trial court pending arbitration. After an evidentiary hearing on March 4, 2002, the trial court denied relators' application for temporary injunction and granted BodyBilt's motion to compel arbitration and to abate the proceedings by order signed April 12, 2002. The trial court also filed findings of fact and conclusions of law, finding that BodyBilt had faxed its demands for arbitration to the AAA on November 13, 2001 and concluding that those demands were filed within the time frame specified in the 1996 agreement.

2. The mandamus record indicates that real party in interest, The American Arbitration Association, defendant below, has declined to participate in the underlying proceeding, but has agreed to be bound by any ruling by the trial court with regard to arbitration.

3. The facsimile transmission verification report introduced into evidence shows that the transmission commenced at 7:03 p.m. At the hearing, counsel argued that it was really 6:03 p.m., due to the change from Central Daylight Savings Time to Central Time 13 days earlier on October 31, 2001. No evidence was introduced, however, as to which time the facsimile machine had been set. The parties apparently presented evidence of the time of the facsimile transmission because another provision of the settlement agreement was that the parties agreed that they would be responsible for their own attorney's fees incurred after 7:00 p.m., November 13, 1996. The exact time of transmission is not relevant to our disposition today.

## Proper Forum

■ We must first decide which forum has the authority to decide the merits of this dispute, the trial court or an arbitrator. We look to the recent decision of *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 591–93, 154 L.Ed.2d 491 (2002) for guidance.

In *Howsam*, the Court analyzed the "question of arbitrability" in two prongs: issues of procedural arbitrability and those of substantive arbitrability. *Id.* Procedural arbitrability encompasses those questions "which grow out of the dispute and bear on its final disposition." *Id.* They include determinations whether conditions precedent to arbitrability, such as notice, time limits, laches, and estoppel, have been met. *Id.* Procedural arbitrability is the province of the arbitrator. *Id.* Substantive arbitrability, by contrast, implicates the sort of "gateway" issues such as whether a particular arbitration agreement binds the parties to arbitrate a given dispute. Such questions are reserved for judicial determination. *Id.* Therefore, the classification of the issue determines which forum has adjudicative authority. *Id.*

In *Howsam*, the Court held that the application of a six-year limitation from the date of the occurrence under the arbitration rules of the National Association of Securities Dealers was an issue of procedural arbitrability for the arbitrator, rather than a question of substantive arbitrability for the judge. *Id.* In the present case, we are confronted with a question of whether a valid agreement to arbitrate existed to bind the parties to arbitration in the first instance. We are not faced, like the Court in *Howsam*, with the interpretation of a procedural rule of the arbitrators themselves. Determining whether the agreement to arbitrate expired by its terms is a question of the very existence of an agreement to arbitrate. Therefore, it is an issue of substantive arbitrability reserved for judicial determination.

## Standard of Review

■ Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate remedy at law. *In re Masonite Corp.,* 997 S.W.2d 194, 197 (Tex.1999). When a trial court erroneously grants a party's motion to compel arbitration, the movant has no adequate remedy at law and is entitled to a writ of mandamus. *See In re Am. Homestar, Inc.,* 50 S.W.3d 480, 483 (Tex. 2001). We review the trial court's order for abuse of discretion. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex. 1992); *Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs.,* 73 S.W.3d 545, 548 (Tex.App.-Houston [1st Dist.] 2002, no pet.). A trial court abuses its discretion when it errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703 (Tex.1998); *Trico Marine Servs.,* 73 S.W.3d at 548.

■ " 'A party cannot be required to arbitrate unless it has agreed to do so.' " *Trico Marine Servs.,* 73 S.W.3d at 548 (quoting *Hou–Scape, Inc. v. Lloyd,* 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding)); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon Supp.2003) (requiring judge to order arbitration upon finding agreement to arbitrate). "The parties' agreement to arbitrate must be clear. In this determination, Texas contract law applies." *Trico Marine Servs.,* 73 S.W.3d at 548 (citations omitted). "Construction of an unambiguous contract is a question of law." *Id.* (citing *MCI Telecommunications Corp. v. Texas Util. Elec. Co.,* 995 S.W.2d 647, 650 (Tex.1999)).

## Burden of Proof

Under both the Texas Arbitration Act ("TAA") and the Federal Arbitration Act ("FAA"), a party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the claims asserted fall within the agreement's scope.[4] *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a). Whether an enforceable agreement to arbitrate exists is a legal question subject to de novo review. *In re Kellogg Brown & Root*, 80 S.W.3d at 615. If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(b) (Vernon Supp. 2003); *Mohamed*, 89 S.W.3d at 835.

## Analysis

In their second issue, relators argue that the trial court abused its discretion in compelling arbitration because BodyBilt's demands for arbitration were untimely. Because this is a threshold issue, we address it first. We agree that BodyBilt did not initiate arbitration before the agreement to arbitrate had expired.

■ The settlement agreement between the parties is dated November 13, 1996, and was signed by all parties that day. Under section 7.01, the 1996 settlement agreement states that the parties "agree that for a period of five (5) years from the date of this Agreement all disputes and controversies which arise between the Parties shall be submitted to binding arbitration under the Commercial Rules of the American Arbitration Association.... " Relators first argue that Body-Bilt's demands for arbitration were faxed a day too late because the five-year period that the arbitration provision was to remain in effect began on November 13, 1996; therefore, the period ended on November 12, 2001. We disagree.

■ Under the law of Texas and most other states, when time is to be computed from or after a certain day or date, the designated day is to be excluded, and the last day of the period is to be included unless a contrary intent is clearly manifested by the contract. *Home Ins. Co. v. Rose*, 152 Tex. 222, 255 S.W.2d 861, 862 (1953). We find no contrary intent manifested in the 1996 settlement agreement. Construing the contract as a matter of law, we hold that the five-year period the arbitration provision was to remain in existence ended on and included November 13, 2001.

■ Relators next argue that, even if arbitration could have been initiated on November 13, 2001, BodyBilt did not properly initiate arbitration on that date. We agree.

■ Under the arbitration provision in the 1996 settlement agreement, the parties agreed that any arbitration would be "under the Commercial Rules of the American Arbitration Association." The choice of particular arbitration rules by the parties in an agreement to arbitrate binds the parties to the provisions of those rules regarding the initiation of arbitration.

---

**4.** In its findings of fact and conclusions of law, the trial court declined to rule on whether the arbitration provision contained in the 1996 settlement agreement was governed by the TAA or the FAA. Only mandamus, not interlocutory appeal, lies over an order granting a motion to compel arbitration, however, whether under the TAA or the FAA. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

Rule R–4(a) of the AAA's Commercial Arbitration Rules provides as follows:

**R–4 Initiation under an Arbitration Provision in a Contract**

(a) Arbitration under an arbitration provision in a contract *shall be initiated* in the following manner:

i. The initiating party (the "claimant") *shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand")*, which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

ii. The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

iii. The AAA shall confirm notice of such filing to the parties.

AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL DISPUTE RESOLUTION PROCEDURES (INCLUDING MEDIATION AND ARBITRATION RULES) Rule R–4 (2000) (emphasis added).

The 1996 settlement agreement states that, for a period of five years, the parties will arbitrate all disputes under the Commercial Arbitration Rules of the AAA. Rule R–4 requires a claimant to initiate arbitration by providing written notice of its intent to arbitrate to the respondent within the time period specified in the contract. It is undisputed that BodyBilt did not give written notice of its intent to arbitrate to relators until November 16, 2001, three days after the five-year period specified in the contract had lapsed. Because the arbitration provision had expired by its own terms before BodyBilt initiated arbitration pursuant to the arbitration rules agreed to in the 1996 settlement agreement, there was no valid agreement to arbitrate.

**Conclusion**

We hold that BodyBilt, as the party seeking to compel arbitration, failed to carry its burden to prove the existence of a valid agreement to arbitrate because, on the undisputed facts, the arbitration agreement had expired before BodyBilt initiated arbitration. Thus, the trial court abused its discretion in denying the requested anti-arbitration injunction and ordering the parties to arbitrate in the absence of a valid agreement to arbitrate. Because of our resolution of issue two, we do not need to reach relators' remaining issues.

We conditionally grant the petition for writ of mandamus and order the trial court to vacate its April 12, 2002 order denying an anti-arbitration injunction and granting the motion to compel arbitration of the real parties in interest, BodyBilt, Inc. and ErgoBilt, Inc. The writ will issue only if the trial court fails to vacate its order.