COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
|  | § |  |
| IN RE:  POLYMERICA, LLC d/b/a | § |  |
| GLOBAL ENTERPRISES, INC., | | No. 08-08-00070-CV |
| | § | |
| Relator. | | AN ORIGINAL PROCEEDING |
| | § | |
| | | IN MANDAMUS |
| | § | |
| | | |
| | § | |

**OPINION ON PETITION FOR WRIT OF MANDAMUS**

Relator, Polymerica, LLC d/b/a Global Enterprises, Inc. (Global), seeks a writ of mandamus ordering Respondent, the Honorable M. Sue Kurita, Judge of the County Court at Law Number Six of El Paso County, to grant Relator's Motion to Compel Arbitration.  Finding an abuse of discretion, we conditionally grant the petition for writ of mandamus in part.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Global Enterprises, a manufacturer of plastics and automotive interior products, is based in El Paso.  Real Party in Interest, Angelica Soltero, was hired by Global in 1997 to work as a human resources manager.  In 2002, Global contracted with *dm*Dickason Staff Leasing Company (Dickason) to manage Global's human resources department.  In July of 2002, Dickason required its employees, including Soltero, to sign an employment agreement.  Soltero did so.  This agreement provided that Soltero became a joint employee of Global and Dickason on July 12, 2002.  The employment agreement contained an arbitration clause which provided:

**Arbitration.**   All disputes between you and *dm*Dickason shall be resolved exclusively through arbitration under the Federal Arbitration Act, the American Arbitration Association's National Rules for the Resolution of Employment Disputes, and the *dm*Dickason Dispute Resolution Plan found in this handbook, following this Employment Agreement.  The decision of the arbitrator shall be final and binding and may be enforced in any court with jurisdiction.  *dm*Dickason will provide you with a copy of the then current Dispute Resolution Plan at any time, on your request reasonably made.

Dickason also distributed a Dispute Resolution Plan, which also contained an arbitration clause that Soltero was required to sign.  Once again, she did so.  The Dispute Resolution Plan provided, in pertinent parts:

**Application.**  This Plan applies to all disputes between applicants for employment, Employees or former Employees of Company, whether raised during or after employment.  This Plan applies to any claim against any successor, representative, agent, employee, officer, director, stockholder, administrator, executor or assignee of Employee or *dm*Dickason (Company).

.   .   .

**"Covered Dispute"** means any legal or equitable claim, demand or controversy between Employee and *dm*Dickason and/or Global Enterprises.  Covered Dispute includes all claims based on any statute, regulation, common law tort, contract or alleging violation of any other legal obligation between Employee and *dm*Dickason.  Covered Dispute[s] specifically include, but are not limited to, any disputes related to:  (a) this Plan; (b) hiring, discharge, promotion, demotion, transfer, reassignment, discipline, evaluation, wages, bonuses, commissions, compensation, benefits, terms and conditions of employment; (c) any employee benefits, including, for example, retirement benefits or savings plans; (d) claims of discrimination, for example, race, sex, national origin, disability, color, age, harassment or retaliation; (e) statutory claims related to employment, including employment discrimination, retaliation or harassment; (f) breach of contract claims; (g) defamation, negligence or other torts; and (h) any other matter based on related to or growing out of the employment relationship.  Covered Disputes specifically include, but are not limited to disputes related to: wages, benefits, discrimination, wrongful discharge, sexual harassment, workers' compensation retaliation, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act, Americans with Disabilities Act, 42 U.S.C. § 1981, Fair Labor Standards Act, Family & Medical Leave Act, Employee Retirement Income Security Act, Texas Labor Code, defamation invasion of privacy, punitive damages, or intentional infliction of emotional distress.

2

**"Employee"** means any current or former employee who was an employee on or after the effective date of this Plan, together with that person's administrators, executors, heirs and assigns. Employee includes but is not limited to, regular employees, temporary employees, and assigned or leased employees, including Management, and Executives of Company.

The Dispute Resolution Plan also provided:

**Arbitration Procedures**. [A]ny unresolved dispute involving legally protected rights shall be resolved exclusively through binding arbitration under the Federal Arbitration Act . . . .

In 2003, Global distributed an employee handbook, and required Soltero and all other employees to acknowledge receipt of the handbook. Soltero signed an acknowledgment that she had received the handbook. The handbook provided that:

This Employee Handbook is a revised version of any previous Employee Handbook issued by the Employer. This Handbook supercedes and revokes all prior versions of a Handbook or any memo, bulletin, policy or procedure, on any subject discussed in this Handbook that has been issued prior to the date occurring below. . . .

.  .  .

In addition, I understand that this Handbook states Global's policies and practices in effect on the date of this publication. I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract with Global for benefits, or for any other purpose. I also understand that these policies and procedures are continually evaluated and may be amended, modified or terminated at any time.

The following section, entitled "**Dispute Resolution and Arbitration**," provided:

All disputes between you and *dm*Dickason/Global shall be resolved exclusively through arbitration under the Federal Arbitration Act. All employees are required to sign a Dispute Resolution Plan Agreement, as a condition of employment, during their new employee orientation on the first day of employment.

*dm*Dickason/Global's Dispute Resolution Plan and Arbitration Agreement is intended to provide a method for solving problems that is fair, prompt and effective. Under this plan, you can bring the same kinds of claims and obtain the same kinds of relief that you could in court. Arbitration provides a way to have a legal dispute

quickly heard by a trained person under less formal rules (and for a lot less cost) than would apply in a courtroom.

Your decision to accept employment with Global, or to continue your current employment after the effective date of the Dispute Resolution Plan, will mean that you have agreed to, and are bound by the Plan. All disputes between you and *dm*Dickason, and/or you and Global shall be resolved exclusively through arbitration under the Federal Arbitration Act, the American Arbitration Association's National Rules for the Resolution of Employment Disputes, and *dm*Dickason's dispute resolution plan that is given to all employees during their initial employment orientation with *dm*Dickason. The decision of the arbitrator shall be final and binding and may be enforced in any court of jurisdiction. *dm*Dickason will provide you with new or replacement copies of the then current dispute resolution plan at any time, on your request reasonably made.

In June of 2005, Global began an effort to optimize its El Paso operations and to reduce costs. As part of this initiative, the decision was made to terminate Global's contract with Dickason, and to resume full management responsibility over its Human Resources Department. On December 31, 2005, Global terminated its contract with Dickason. On January 4, 2006, Global terminated Soltero's employment.

On January 31, 2007, Soltero filed a lawsuit against Global, alleging wrongful termination, in part because of her national origin and retaliation resulting from her reports of sexual harassment on the part of the company president, Manuel Gutierrez. She did not sue Dickason. These claims were made under the auspices of the Texas Labor Code, sections 21.001 *et seq.* Soltero alleged damages proximately caused by Global's actions, to include back pay and benefits, front pay and benefits, compensatory damages in the past and future, reasonable and necessary attorney's fees, exemplary damages, prejudgment and post-judgment interest as allowed by law, cost of Court and other compensatory damages. An award was sought for all the above damages in an amount within the jurisdictional limits of the Court.

4

As part of the discovery process, Soltero's deposition was taken on October 4, 2007. In her deposition, she stated that she was retaliated against after she filed a complaint against Manny Gutierrez. She did not receive any raises after filing the complaint. She also stated that she was undercut by others regarding her duties as human resources manager. Further, she testified that she did not trust the human resources support person at Dickason, as that individual was allegedly colluding with others to fire people who filed workers' compensation claims. Soltero also stated that she understood that disputes involving the leased employees would be submitted to arbitration. Sometime later, she clarified that statement in a written correction, stating that any claims against Dickason would be submitted to arbitration.

Valerie Scott replaced Soltero as Global's human resources manager. Scott stated that she was unaware of any arbitration agreement after the termination of Global's relationship with Dickason. She agreed that from January 2006 until July 2007, when Global created a new arbitration agreement, there was no arbitration agreement in effect.

In response to the lawsuit, Global filed "Defendants' Motion to Compel Arbitration and Stay Proceedings." Soltero filed a response and, after considering the evidence and arguments of counsel, the trial court denied the motion. Global filed a motion for the court to reconsider its ruling, and Soltero again filed a response. The trial court denied the motion to reconsider.

## II. DISCUSSION

Mandamus is an extraordinary remedy, available solely to correct a clear abuse of discretion, when there is no other adequate remedy by appeal, as is the case when a party is erroneously denied its contractual arbitration rights under the Federal Arbitration Act. *In re American Nat'l Ins. Co.,* 242 S.W.3d 831, 833-34 (Tex. App.--El Paso 2007, orig. proceeding). A writ of mandamus will

issue if the trial court has clearly abused its discretion and there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex.1992) (orig. proceeding); *In re Border Steel, Inc.,* 229 S.W.3d 825, 829 (Tex. App.--El Paso 2007, orig. proceeding). Regarding the resolution of factual issues or matters within the trial court's discretion, we may not substitute our judgment for that of the trial court. *Border Steel,* 229 S.W.3d at 829. The relator is required to demonstrate that the trial court could reasonably have reached only one decision. A trial court's decision will not be disturbed unless it is shown to be arbitrary and unreasonable. With respect to the resolution of legal issues, however, our review is much less deferential; a trial court has no discretion in determining what the law is or in applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

A party seeking to compel arbitration is required to establish the existence of a valid arbitration agreement and show that the claims raised in the pleadings fall within the scope of that agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding); *Border Steel*, 229 S.W.3d at 832; *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.--El Paso 2004, orig. proceeding [mand. denied]). The law presumes the existence of an arbitration agreement, and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration. *Border Steel*, 229 S.W.3d at 832. An agreement to arbitrate is valid and enforceable, unless some ground, such as fraud or unconscionability, exists at law or in equity for the revocation of any contract. State contract law determines the validity of an arbitration agreement. *Id.*

Whether there is an enforceable agreement to arbitrate is a question of law, which we review *de novo*. *Id.* at 832-33. If there is a valid agreement, then the burden shifts to the party opposing arbitration to raise an affirmative defense. *Id.* at 833.

6

Global asserts that arbitration should be compelled for three reasons: (1) estoppel allows Global to enforce the arbitration agreement, as Soltero received direct benefits under the arbitration agreements during her employment; (2) equitable estoppel requires Soltero to arbitrate her claims against Global, because it was a joint employer of Soltero and it is entitled to enforce the arbitration agreements; and (3) Global is an intended third-party beneficiary of the arbitration agreements between Soltero and Dickason.

Initially, we must address Soltero's assertion that Global has waived the contentions concerning direct-benefits estoppel and the allegation that Global is an intended third-party beneficiary of the arbitration agreements between Soltero and Dickason.

Global asserts in its petition for writ of mandamus that two separate avenues exist to establish direct-benefits estoppel. First, a party can be compelled to arbitrate, if that party seeks, through the claim, to derive a direct benefit from the contract that contains the arbitration provisions. Second, a party can be compelled to arbitrate, if that party deliberately seeks and obtains substantial benefits from the contract itself. It is this second theory that Global insists applies in this case. Global maintains that Soltero received substantial and direct benefits under the arbitration agreements which are involved in the case, in that she received payment and wages under the joint-employment agreement and Dispute Resolution Plan.

TEX. R. APP. P. 33.1 requires that a party must first present its complaint to the trial court and obtain a ruling on that complaint, in order to preserve the issue on appeal. This requirement applies to mandamus proceedings. *In re East Tex. Med. Ctr. Athens*, 154 S.W.3d 933, 936 (Tex. App.--Tyler 2005, orig. proceeding); *West v. Solito*, 563 S.W.2d 240, 244-45 (Tex. 1978) (orig. proceeding).

7

Global responds that it preserved this issue by its reference to *In re Dallas Peterbilt, Ltd.,* 196 S.W.3d 161, 24 Indiv. Empl. Rts. Cas. (BNA) 1304 (Tex. 2006). Global cited this case in a portion of its motion to compel arbitration discussing the contention that the parties had agreed to arbitrate their disputes. *Dallas Peterbilt* held that, regarding the acceptance of the agreement, the fact that the at-will employee signed, accepted, and continued employment under the arbitration agreement constituted automatic coverage by the arbitration agreement, as a matter of law. 196 S.W.3d at 163. While this case did not involve a non-signatory to an arbitration agreement's being allowed to enforce such an arbitration agreement, we find that the reference to the employee's accepting a benefit under the contract put the trial court on notice as to Global's claim, given the context of the litigation. Accordingly, we conclude that this issue was preserved on appeal.

However, we reach a different result with regard to the contention that Global was an intended third-party beneficiary of the arbitration agreements between Soltero and Dickason. As stated, a party must first present its complaint to the trial court and obtain a ruling on that complaint in order to preserve the issue on appeal in mandamus proceedings. *In re East Tex. Med. Ctr. Athens,* 154 S.W.3d at 936. It does not appear anywhere in the record that Global raised this contention in the trial court. Accordingly, Global has failed to preserve this issue on appeal.

We also note that Soltero asserts that the provisions of the Employee Handbook nullified and superceded the arbitration agreements with Dickason. However, the above-quoted provisions of the handbook appear to reference the arbitration provisions and indicated that disputes between the employee and Global and Dickason were to be arbitrated pursuant to the Dispute Resolution Plan. We fail to see how the handbook nullifies the arbitration agreements; rather, it appears to reference them.

8

In certain instances, a nonparty may be compelled to arbitrate, if it deliberately seeks and obtains substantial benefits from the contract itself. The analysis involved focuses on the nonparty's conduct during the performance of the contract. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132-33 (Tex. 2005) (orig. proceeding). Furthermore, a non-signatory may be bound to an arbitration agreement on the ground of equitable estoppel. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Federal courts have limited estoppel in that context to cases involving non-signatories who, during the life of the contract, have embraced the contract, seeking to derive direct benefits from it, but then, during litigation, attempt to repudiate the arbitration clause in the contract. *Id.* It has been held that, where a party has received payments under a contract, it was estopped from claiming that a non-signatory to the contract could not invoke the arbitration clause in the contract. *TC Arrowpoint, L.P. v. Choate Constr. Co.*, No. 3:05-CV-00267, 2006 WL 91767, at *12 (W.D.N.C. Jan. 13, 2006).

Global asserts that Soltero received payment and wages under the joint-employment agreement and Dispute Resolution Plan. Global also maintains that Soltero was a signatory to the Dispute Resolution Plan, which stated that acceptance was a condition of her employment. She continued to work as a joint employee of Dickason and Global for approximately three years. As such, Soltero's continued employment was sufficient to bind her to the terms of the agreements. *See Dallas Peterbilt*, 196 S.W.3d 161. Soltero counters that direct-benefits estoppel does not apply, because her claims centered on statutory violations and are therefore independent of the arbitration agreement. However, under the theory of direct-benefits estoppel urged by Global, the theory applies in circumstances other than where benefits from a contract are sought through legal action. That is, a nonsignatory who deliberately seeks or obtains substantial benefits from the contract itself may be

9

compelled to arbitrate claims against a signatory to the contract. The reviewing court's analysis focuses on the nonparty's conduct during the performance of the contract. *See St. Clair v. Brooke Franchise Corp.*, No. 2-06-216-CV, 2007 WL 1095554, at *5 (Tex. App.--Fort Worth Apr. 12, 2007, no pet.).

Here, Soltero received benefits under the joint-employment agreement and Dispute Resolution Plan. We find that under this substantial benefits type of equitable estoppel, the court should have granted the motion to compel arbitration.[1] However, this is true regarding only those claims arising during the period the arbitration agreements were in effect. We do not perceive that Global can enforce the arbitration agreements for those claims arising from the alleged wrongful termination occurring after the operating agreement between Global and Dickason ended. *See In re Neutral Posture, Inc.*, 135 S.W.3d 725, 730 (Tex. App.--Houston [1st Dist.] 2003, orig. proceeding).

### III. CONCLUSION

We conditionally grant Global's petition in part, insofar as it pertains to those matters referenced that are alleged to have occurred prior to the termination of the joint agreement between Global and Dickason, and we instruct the trial court to vacate its order denying Global's motion to compel arbitration to that extent, to issue an order compelling Soltero to arbitrate those claims, and to stay all proceedings pending arbitration. Only if the trial court fails to comply with these directions shall we instruct the clerk to issue the writ.

---

[1] Global also raises a type of equitable estoppel revolving around substantially interdependent and concerted misconduct between Dickason and Global. Soltero asserts that the Texas Supreme Court has held that this theory of equitable estoppel does not provide a sufficient basis to compel arbitration. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding). However, given our disposition regarding Global's equitable estoppel claim, we need not address this contention.

KENNETH R. CARR, Justice

November 25, 2008

Before McClure, J., Carr, J., and Gomez, Judge
Gomez, Judge, sitting by assignment