**In re POLYMERICA, LLC d/b/a Global Enterprises, Inc., Relator.**

No. 08–1064.

Supreme Court of Texas.

Oct. 23, 2009.

Henry John Paoli, M. Mitchell Moss, Scott Hulse, P.C., El Paso, TX, for Relator.

John P. Mobbs, Attorney At Law, George Paul Andritsos, Attorney At Law, El Paso, TX, for Real Party in Interest.

PER CURIAM.

Polymerica, LLC. d/b/a Global Enterprises, Inc. ("Global") seeks a writ of mandamus ordering the trial court to grant its motion to compel arbitration. Global, in

El Paso-based manufacturer of plastics, hired Angelica Soltero in 1998. In 2002, Global contracted with *dm* Dickason Staff Leasing Company ("Dickason") to manage Global's human resources department. Soltero signed a Dispute Resolution Plan, which "appl[ies] to any disputes between *dm* Dickason/Global Enterprises and any applicant for employment, employee or former employee, including legal claims such as discrimination, wrongful discharge or harassment." The Plan includes a four-step process for resolving disputes, the fourth of which requires binding arbitration under the Federal Arbitration Act. The Plan notes that it is "a condition of employment and of continued employment" and that "employment or continued employment after the effective date of this Plan constitutes consent by the Employee to be bound by this Plan."

Subsequently, Global distributed an employee handbook and required Soltero and all other employees to acknowledge its receipt. The acknowledgment recites that the handbook "takes precedence over, supercedes, and revokes any previous memo, bulletin, policy or procedure issued prior to [July 6, 2003], by Global Enterprises on any subject discussed in the Handbook." The handbook includes a section on arbitration, which provides, in pertinent part:

> All disputes between you and *dm* Dickason/Global shall be resolved exclusively through arbitration under the Federal Arbitration Act. All employees are required to sign a Dispute Resolution Plan Agreement, as a condition of employment, during their new employee orientation on the first day of employment. *dm* Dickason/Global's Dispute Resolution Plan and Arbitration Agreement is intended to provide a method for solving problems that is fair, prompt and effective.
>
> . . .

Your decision to accept employment with Global, or to continue your current employment after the effective date of the Dispute Resolution Plan, will mean that you have agreed to, and are bound by the Plan. All disputes between you and *dm* Dickason, and/or you and Global shall be resolved exclusively through arbitration under the Federal Arbitration Act, the American Arbitration Association's National Rules for the Resolution of Employment Disputes, and *dm* Dickason's dispute resolution plan that is given to all employees during their initial employment orientation with *dm* Dickason.

On December 31, 2005, Global ended its operating agreement with Dickason and resumed full management of its human resources department. Five days later, Global terminated Soltero.

Soltero sued Global under chapter 21 of the Texas Labor Code alleging wrongful termination based on her national origin as well as retaliation for reporting alleged sexual harassment. The trial court denied Global's motion to compel arbitration. Global sought mandamus relief, which the court of appeals granted in part. 271 S.W.3d 442. The court of appeals held that Soltero's claims arising before Global and Dickason ended their relationship must be arbitrated, but that those arising after Global and Dickason's operating agreement ended should not. *Id.* at 449. Soltero then nonsuited any claim arising before January 1, 2006 and alleged that, because her termination occurred after the Global/Dickason agreement ended, none of her claims were subject to arbitration. The trial court agreed, concluding that "all of [Soltero's] claims in this suit arise from the wrongful termination occurring after the operating agreement between Global and Dickason ended." The trial court lifted the previously ordered stay and placed

the case on the trial docket. Global asks us to order the trial court to compel arbitration as to all of Soltero's claims and to stay the proceedings pending arbitration.

Soltero concedes that she signed the Dispute Resolution Plan and the 2003 Handbook, but she argues that the Handbook's statement revoking prior versions nullifies the Dispute Resolution Plan. That Handbook provision, however, does not cover contracts like the Plan's arbitration agreement. We also note that the Handbook and the Dispute Resolution Plan were intended to work in tandem. 227 S.W.3d at 448 ("We fail to see how the handbook nullifies the arbitration agreements; rather, it appears to reference them."); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). If the 2003 Handbook's discussion of arbitration eliminated the Dispute Resolution Plan, the Handbook's discussion of—and multiple references to—the Plan would be meaningless. *See Davidson*, 128 S.W.3d at 229.

■ Soltero also asserts that the Dispute Resolution Plan is illusory because the 2003 Handbook could be modified at any time. *See id.* at 230 n. 2 (noting that "most courts . . . have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory"). But the Dispute Resolution Plan has its own termination provision, which requires notice to employees and applies prospectively only. Because Global cannot "avoid its promise to arbitrate by amending the provision or terminating it altogether," *In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex.2002), the Dispute Resolution Plan is not illusory.

■ Next, Soltero contends that because only Dickason, not Global, was a party to the Dispute Resolution Plan, Global may not enforce the Plan's terms. Global counters that even though it did not sign the Plan, it can enforce Dickason's agreement with Soltero under the equitable theory of direct-benefits estoppel. We need not address direct-benefits estoppel, however, because both Global and Soltero were parties to the Plan. The Plan notes that it "will apply to any disputes between *dm* Dickason/Global Enterprises and any applicant for employment, employee or former employee." It also defines "covered dispute" as including any claim, demand, or controversy "between Employee and *dm* Dickason and/or Global Enterprises." Although the Plan is signed only by Soltero and Dickason, we have never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee. "[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties." *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 n. 5 (Tex.2005) (noting, however, that Texas Arbitration Act requires signatures for contracts of less than $50,000 or personal injury claims); *see also In re Macy's Tex., Inc.*, 291 S.W.3d 418, 418 (Tex.2009) (per curiam) (observing that "[t]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed"); *Halliburton*, 80 S.W.3d at 569 (holding arbitration clause was accepted by continued employment). And while the Plan provides that it covers disputes involving former employees of the "company," defined as "*dm* Dickason Staff Leasing Company, Inc. together with its subsidiaries, parent companies, affiliates, officers, directors, employees, agents, representatives, shareholders and assigns," it also states that it applies to "any disputes between *dm* Dickason/Global Enterprises and any . . . former employee." *See In re D. Wilson Con-*

*struction Co.*, 196 S.W.3d 774, 782 (Tex. 2006) (observing that "we resolve doubts as to the scope of the agreements in favor of coverage"); *In re FirstMerit Bank*, 52 S.W.3d 749, 753 (noting that "courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration").

■ The court of appeals held that Global could not enforce the arbitration agreements "for those claims arising from the alleged wrongful termination occurring after the operating agreement between Global and Dickason ended." 271 S.W.3d at 449. The court relied on *In re Neutral Posture, Inc.*, 135 S.W.3d 725, 730 (Tex. App.-Houston [1st Dist.] 2003, no pet.), to explain why claims post-dating the operating agreement must be tried rather than arbitrated, but we find *Neutral Posture* to be distinguishable. The arbitration agreement there included a condition stating that the parties must resolve disputes via arbitration only during a set five-year period, and the claim at issue was filed after the expiration of that period. *Id.* There is no such time limitation in the Dispute Resolution Plan, nor is there a condition that the Global and Dickason relationship must be in existence for either to enforce the Plan. Soltero's agreement to arbitrate survives the dissolution of that relationship, and the Dispute Resolution Plan explicitly covers former employees like Soltero.

■ The court of appeals also noted that Global's former human resources manager, Valerie Scott, "was unaware of any arbitration agreement after the termination of Global's relationship with Dickason," and "[s]he agreed that from January 2006 until July 2007, when Global created a new arbitration agreement, there was no arbitration agreement in effect." 271 S.W.3d at 446–47. But Scott's testimony is ambiguous on this point. She testified that she "never even thought about [whether the 2002 agreement]" was still in

effect after the relationship between Global and Dickason ended. When asked whether Global employees were covered by an arbitration agreement in 2006, she answered that "[t]here was not an arbitration agreement that we—that was created by Global Enterprises" and that she was unaware of any other arbitration agreement that might have applied to Global's employees. Even if Scott had testified that no arbitration agreement was in effect, her statements could not alter the effect of the unambiguous agreement. *See In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex.2006) (noting that "[t]he objective intent as expressed in the agreement controls the construction of an unambiguous contract, not a party's after-the-fact conduct"); *Davidson*, 128 S.W.3d at 229 ("In construing this agreement, we first determine whether it is possible to enforce the contract as written, without resort to parol evidence.").

■ Soltero's promise to arbitrate includes her claims against Global. Mandamus relief is appropriate when a party is forced to trial despite an enforceable agreement to arbitrate. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008). Accordingly, without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant Global's petition for writ of mandamus and direct the trial court to compel arbitration as to all of Soltero's claims and stay the proceedings pending arbitration. We are confident the trial court will comply, and our writ will issue only if it does not.