COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANIEL MENDIVIL, | § | No. 08-10-00359-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | County Court at Law Number 5 |
| ZANIOS FOODS, INC., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2009-4554) |

## O P I N I O N

Daniel Mendivil appeals the trial court's order compelling arbitration, complaining that the arbitration provision was invalid, illusory, and unconscionable. For the reasons that follow, we reverse and remand.

## FACTUAL SUMMARY

Mendivil was employed as a delivery-truck driver for Zanios Foods, Inc. in El Paso, Texas, and made deliveries both within El Paso and outside of Texas. Upon commencement of his employment, Mendivil was the sole signatory of an Arbitration Policy Statement (APS) prepared by Zanios, which states:

> In consideration of Zanios Foods, Inc.'s offer to employ or to continue to employ me and my agreement to accept employment or continued employment under the terms set forth in this Arbitration Policy Statement, I acknowledge that my employment at Zanios is "at will", meaning I can be terminated or quit my employment at any time for any or no reason and I further agree that any controversy, claim, or dispute against Zanios Foods, Inc. ("Zanios") arising out of or relating to my employment with Zanios or the termination of my employment with Zanios . . . shall be resolved exclusively by final and binding arbitration . . . .

> Arbitration shall be the sole and exclusive remedy for any such controversy, claim, or dispute against Zanios. I acknowledge that I am knowingly and

voluntarily waiving the right to purse [sic] any such controversy, claim, or dispute against Zanios in any court or administrative forum and instead will pursue them through arbitration.

I understand that if I decide to submit any dispute to arbitration in accordance with this Arbitration Policy Statement, I must submit a written request for arbitration to Zanios's President within one (1) month from the date of the incident in question, and I must respond within ten (10) calendar days to each communication regarding the selection of an arbitrator, the scheduling of an arbitration hearing, or any other matters related to the arbitration proceeding. If Zanios does not receive a written request for arbitration from me within one (1) month, or if I do not respond to any communication about the arbitration proceeding within ten (10) calendar days, I understand and acknowledge that I will have knowingly and voluntarily waived my right to arbitration on the incident in question[.] The arbitration shall be held in Albuquerque, New Mexico. The parties shall each pay one-half of the cost of the arbitrator and each party shall otherwise pay its own costs and attorneys' fees.

If this Arbitration Policy Statement shall for any reason be declared unenforceable, I knowingly and voluntarily waive the right to a trial by jury in any action or judicial proceeding which would otherwise have been subject to arbitration.

By signing below, I acknowledge that I have read this Arbitration Policy Statement, understand its contents, and voluntarily agree to abide by its terms.

After Mendivil suffered an injury in the course of his employment, Zanios terminated his employment, allegedly for a reason unrelated to the injury. Mendivil filed suit against Zanios under Chapter 451 of the Texas Labor Code, which prohibits the discharge of or discrimination against an employee who files a workers' compensation claim in good faith or hires a lawyer to represent the employee in a claim. TEX. LAB. CODE ANN. § 451.001 (West 2006).

In a motion to compel arbitration, Zanios alleged that Mendivil's signature on the APS represented his understanding that the offer of employment was conditioned upon a promise to arbitrate his claims. Mendivil countered that no valid arbitration agreement existed because the APS lacked proper consideration and mutual language requiring Zanios to arbitrate, to be bound by arbitration, or to perform any mutual promise. Mendivil maintained that the APS was illusory

2

because it contained no provisions by which Mendivil could either enforce the arbitration agreement against Zanios or require Zanios to arbitrate because Zanios had not promised anything. Mendivil likewise declared the APS unconscionable in part because the provisions required that he arbitrate his claims in Albuquerque, New Mexico, give notice of his intent to arbitrate within thirty days of any incident or waive arbitration, respond to all letters from Zanios within ten days or risk waiving his opportunity to arbitrate, and pay one-half of any arbitration fees.

In response, Zanios argued that no case law requires an employer's reciprocal, mirrored promise to arbitrate any claims it might have against an employee in exchange for the employee's promise to arbitrate, and contended that an employer need only provide "some" consideration to render an arbitration agreement enforceable. According to Zanios, it had provided sufficient consideration to form a valid arbitration agreement with Mendivil by agreeing: (1) to binding arbitration; (2) to be bound by the result; (3) to arbitrate in a particular venue; (4) to have arbitration conducted under particular rules; (5) to pay for one-half of the arbitration fee; (6) to pay its own attorney's fees and costs; and (7) to forego recovery of its attorney's fees. Zanios informed the trial court that it would agree to conduct arbitration in El Paso and pay the entirety of arbitration costs up to $10,000.

Without expressly finding the APS to be a valid agreement, the trial court granted the motion to compel, ordered that the parties arbitrate in El Paso, and directed that Zanios pay all arbitration fees up to $10,000, after which Mendivil and Zanios would each pay one-half of the arbitration fees in excess of $10,000.

### WAS THERE AN AGREEMENT TO ARBITRATE?

In Issues One and Five Mendivil generally challenges the order compelling arbitration as written and as modified by the trial court. In Issue Four, he contends the APS was

unconscionable. In Issues Two and Three, he complains that the APS is illusory and invalid for lack of mutual consideration. We review *de* novo a trial court's determination regarding the validity of an agreement to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

*Applicable Law*

It is undisputed that the Federal Arbitration Act (FAA), which typically governs arbitration provisions in contracts involving interstate commerce, applies here. *See* 9 U.S.C.A. §§ 1-16 (West 2009); *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). To compel arbitration under the FAA, a party must establish that there is a valid arbitration agreement and that the claims fall within the scope of the agreement. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). While a strong presumption favoring arbitration exists, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson, Inc.*, 128 S.W.3d at 227.

When determining the validity of arbitration agreements that are subject to the FAA, we apply state-law principles that govern the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). When deciding whether a party has met its burden to establish a valid agreement to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Rather, the party attempting to compel arbitration must show that the arbitration agreement meets all requisite contract requirements. *Id.* at 228. If the trial court determines that a valid agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement. *Id.* at 227-28. Nonetheless, although a court may enforce agreements to arbitrate disputes, a court cannot order arbitration in the absence of such an agreement. *Freis v. Canales,* 877 S.W.2d 283,

4

284 (Tex. 1994), *citing United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *see* 9 U.S.C. § 2.

### Contract Elements

The elements required for the formation of a valid and binding contract include: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex.App. – Dallas 2006, pet. denied). An agreement to arbitrate, like other contracts, must also be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).

### Mutual Promises and Consideration

Mutual, reciprocal promises which bind both parties may constitute consideration for a contract. *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 309 (Tex.App. – El Paso 2009, no pet.). Arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract. *In re Lyon Financial Services, Inc.,* 257 S.W.3d 228, 233 (Tex. 2008), *citing In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757 (Tex. 2001). Thus, when an agreement to arbitrate is part of a larger underlying contract, the remainder of the contract may constitute sufficient consideration for the arbitration provision. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re AdvancePCS*, 172 S.W.3d at 607.

However, stand-alone arbitration agreements require binding promises from both sides as they are the only consideration rendered to create a contract. *In re AdvancePCS*, 172 S.W.3d at 607; *see also In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (mutual promises to submit a dispute to arbitration are sufficient consideration to support an arbitration agreement); *Vanegas v.*

*American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) ("'A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee.'"), *citing Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943).

In *In re Halliburton Co.*, an employer provided notice to its employee that it was adopting a new dispute resolution program, by which both the employer and all employees were required to submit all employment disputes to binding arbitration and waived all rights each may have to a trial by jury for employment-related matters. *In re Halliburton, Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002). The employer informed its employees if an employee accepted or continued employment after January 1, 1998, the employee agreed to resolve all legal claims against the employer through the new program rather than in the courts. *In re Halliburton, Co.*, 80 S.W.3d at 569. The Texas Supreme Court determined that the new dispute resolution program was not dependent upon the employee's continuing employment but rather that the employee accepted the terms of the new program as a matter of law by continuing employment beyond January 1, 1998. *In re Halliburton, Co.*, 80 S.W.3d at 569. Because both the employer and the employee mutually promised to submit all employment disputes to arbitration, thus binding both parties to the terms of the new dispute resolution program, the Texas Supreme Court found that the new dispute resolution agreement between the employer and the at-will employee was supported by sufficient consideration and was not illusory. *In re Halliburton, Co.,* 80 S.W.3d at 566, 569-70.

Thus, employers and their at-will employees are not precluded from forming other contracts between themselves, "so long as neither party relies on continued employment as consideration for the contract." *J.M. Davidson, Inc.*, 128 S.W.3d at 228; *In re Polymerica, L.L.C*, 296 S.W.3d 74, 76 (Tex. 2009) (where employer could not avoid its promise to arbitrate by

6

amending a termination provision or terminating it altogether, the dispute resolution plan was not illusory). When mutual promises to submit employment disputes to arbitration bind both parties to their promises to arbitrate, sufficient consideration exists to support an arbitration agreement between the employer and the at-will employee. *In re Halliburton*, *Co.*, 80 S.W.3d at 569-70; *see also J.M. Davidson, Inc.*, 128 S.W.3d at 228.

*Illusory Promises*

A promise which does not bind the promisor, as when the promisor retains the option to discontinue performance, is illusory. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010), *citing Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 849 (Tex. 2009); *see also J.M. Davidson, Inc.*, 128 S.W.3d at 228; *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994) (employer's promises were illusory because they were dependent upon at-will employee's period of continued employment; thus, employer could avoid performance by terminating at-will employee's employment while the employee was bound to her promise whether or not she remained employed); *compare In re Halliburton*, *Co.*, 80 S.W.3d at 569-70 (because mutual promises to submit employment disputes to arbitration bound both parties to their promises to arbitrate, sufficient consideration existed to support the arbitration agreement between the employer and the at-will employee). An agreement to arbitrate may be illusory if a party can unilaterally avoid the agreement to arbitrate. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *J.M. Davidson, Inc.,* 128 S.W.3d at 228-30; *In re Halliburton Co.*, 80 S.W.3d at 569-70. Consequently, when a purported bilateral contract is supported only by illusory promises, there is no contract. *In re 24R, Inc.*, 324 S.W.3d at 567, *citing Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009), *quoting Light*, 883 S.W.2d at 644-45.

*Analysis*

7

The stand-alone APS requires binding promises from both Zanios and Mendivil as such promises are the only consideration provided for the formation of the contract. *In re AdvancePCS*, 172 S.W.3d at 607; *see also In re 24R, Inc.*, 324 S.W.3d at 566-67. But Zanios never expressly agreed to arbitrate its disputes with Mendivil nor to be bound by the result of such arbitration. Clearly, the language of the purported contract does not apply to any claims that Zanios may assert against Mendivil. Indeed, other than Zanios' recital of consideration, there are only two other recitals that are not wholly burdensome to Mendivil alone: (1) the statement identifying the arbitration venue; and (2) the allocation of arbitration costs as well as attorney's fees and costs.

While the benefits to Zanios are clear, those to Mendivil are not. Zanios did not agree to waive a trial by jury and did not agree to resolve any controversy, claim, or dispute that it may have against Mendivil by final and binding arbitration. We are unable to discern from the APS that Zanios has made a mutual, binding promise to Mendivil. When a promise does not bind a promisor, the promise is illusory. *In re 24R, Inc.*, 324 S.W.3d at 564, 567. Had Mendivil sought to compel Zanios to arbitrate under the terms of the APS, he would be unsuccessful as no provision therein binds Zanios to perform such obligation or to be bound by the arbitration result. Consequently, because the APS lacks binding promises from each party as required for the formation of a contract, it lacks the requisite consideration and is illusory. *In re AdvancePCS*, 172 S.W.3d at 607; *see also In re 24R, Inc.*, 324 S.W.3d at 566-67.

Zanios failed to prove the existence of a valid arbitration agreement in the trial court. Because there was no valid arbitration agreement, the trial court erred in compelling arbitration. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d at 515. We sustain Issues Two and Three. Our resolution of these issues renders it unnecessary for us to consider Issues One, Four, and Five.

8

We reverse and remand for further proceedings.

ANN CRAWFORD McCLURE, Chief Justice

January 11, 2012

Before McClure, C.J., Antcliff, J., and Chew, C.J., (Senior)
Chew, C.J., (Senior), sitting by assignment

9